IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Civil Division

SHAWN CUPP, as Attorney-in-Fact for
CAROL CUPP,

    Plaintiff,

vs.

ALLEGHENY COUNTY as owner and operator of JOHN J. KANE REGIONAL CENTER – GLEN HAZEL d/b/a KANE COMMUNITY LIVING CENTER,

    Defendant.

Civil Action No.:

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiff, Shawn Cupp, as Attorney-in-Fact for Carol Cupp, by and through his undersigned counsel, Robert F. Daley, Esquire; Kirstin F. Kennedy, Esquire; Adriana Frontino, Esquire; and the law firm of Robert Peirce & Associates, P.C., and files this Complaint for the Defendant's violations of duties imposed upon it under the Omnibus Budget Reconciliation Act of 1987, the Federal Nursing Home Reform Act, 42 U.S.C. § 1396r, *et seq.*, and the implementing regulations found at 42 C.F.R. § 483, *et seq,* and for violations of the Constitution of the United States of America under Amendment 14, enforceable under 42 U.S.C. § 1983, against the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center, a skilled nursing facility.

### Nature of Action

1.    This is a proceeding under 42 U.S.C. § 1983 to remedy violations of duties under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform

Act ("FNHRA"), the Federal Nursing Home Regulations, as found at 42 C.F.R. § 483, and the Constitution of the United States of America.

## Jurisdiction and Venue

2. As the instant case presents issues of Federal Law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C. § 1331.

3. Venue lies within this judicial district, since all of the actions complained of herein occurred within the Western District of Pennsylvania.

## Parties

4. Plaintiff Shawn Cupp is an adult individual who resides at 834 Vermont Avenue, Glassport, Allegheny County, Pennsylvania 15045.

5. Plaintiff Carol Cupp is an adult individual who resides at 911 Indiana Avenue, Glassport, Allegheny County, Pennsylvania 15045.

6. Plaintiff Shawn Cupp is the son of and attorney-in-fact for Carol Cupp.

7. Defendant Allegheny County is a governmental agency with an office located at 436 Grant Street, Pittsburgh, Allegheny County, Pennsylvania, Pennsylvania 15219.

8. John J. Kane Regional Center – Glen Hazel does business under the name Kane Community Living Center at a registered address and principal place of business located at 955 Rivermont Drive, Pittsburgh, Allegheny County, Pennsylvania 15207.

9. Defendant Allegheny County owns and operates John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center.

10. At all times relevant hereto, John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

11. At the time of the incidents complained of herein, John J. Kane Regional Center – Glen Hazel Township d/b/a Kane Community Living Center was acting under the control of Allegheny County and was acting by and through its authorized agents, servants, and employees then and there acting within the course and scope of their employment.

12. Defendant Allegheny County is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Allegheny County, acting through John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Center, was responsible for the customs, policies, practices, supervision, implementation, and conduct of all matters pertaining to the John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Center facility and was responsible for the appointment, training, supervision, and conduct of all John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Center personnel.

13. In addition, at all relevant times, Defendant Allegheny County was responsible for enforcing the rules of the John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Center facility and for ensuring that personnel employed at the facility obeyed the Constitution and laws of the United States and the Commonwealth of Pennsylvania.

14. Hereinafter, Allegheny County, John J. Kane Regional Center – Glen Hazel and John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Center will be collectively referred to as "Kane."

15. No other actions have been commenced regarding the injuries and damages sustained by Carol Cupp during her residency at Kane.

16. The facts relevant to the causes of action stated herein were known, or in the exercise of due diligence, should have been known to Kane during Carol Cupp's residency.

**Statement of Claims**

17. Plaintiff incorporates by reference every prior and subsequent allegation as though fully set forth herein.

18. Carol Cupp, then age 81, had a prior medical history significant for encephalopathy, hypertension, degenerative joint disease, and unspecified dementia with agitation.

19. Until May 2023, Mrs. Cupp resided independently with her husband.

20. On July 20, 2023, after a brief admission to a different skilled nursing facility, Mrs. Cupp was admitted to Kane in the center's locked memory care unit.

21. Upon admission to Kane, several Care Plans were created to address Mrs. Cupp's needs, including interventions for her dementia-related behavioral symptoms, her risk for falling, and her nutritional requirements.

22. An admission evaluation of Mrs. Cupp revealed she struggled with bowel and bladder continence, cognition, memory, vision, and hearing.

23. Additionally, Mrs. Cupp was categorized by the nursing staff at Kane as a moderate risk for falling due, in part, to several psychological medications that she was prescribed as well as her underlying medical conditions.

24. As a result, it was ordered in Mrs. Cupp's Care Plans that she be monitored for safety and re-directed when walking around the unit.

25. On November 15, 2023, Mrs. Cupp tested positive for COVID-19 during a routine screening. In response, she was placed on isolation precautions.

26. The next day, November 16, 2023, Mrs. Cupp was noted to experience a cough and congestion, as well as a decrease in eating and drinking.

27. Over the course of the following few days, Mrs. Cupp continued to experience a loss of appetite.

28. Although it was ordered that Mrs. Cupp's vital signs, oxygen saturations, and lung sounds be documented on every shift as she recovered from illness, her status was minimally documented in the days after she received a positive COVID-19 test.

29. In the afternoon hours of November 18, 2023, three days after testing positive for COVID-19, Mrs. Cupp was standing near the nursing station at Kane when another resident pushed her. Details surrounding the cause of this incident are not documented in the Kane medical records.

30. After being pushed, Mrs. Cupp fell forward and hit her head on the corner of a wall.

31. Members of the Kane nursing staff who responded to the incident noted that Mrs. Cupp sustained a cut to her head that was about three centimeters long and one-and-a-half centimeters deep.

32. Importantly, no vital signs were taken for Mrs. Cupp on that date, so the full picture of her state of health at that time is not known.

33. As a result of the injury that she sustained after being pushed, Mrs. Cupp was taken to UPMC Shadyside Hospital ("Shadyside") for evaluation and treatment.

34. At Shadyside, Mrs. Cupp was described as sustaining a four-centimeter-long laceration on the left side of her head and a cut on her left ear.

35. A computed tomography ("CT") scan of Mrs. Cupp's head revealed a small hematoma on the left side of her scalp.

36. The cut on Mrs. Cupp's ear required five sutures, and the cut to her scalp required ten staples.

37. Mrs. Cupp was discharged from Shadyside to Kane on that same date.

38. Once back at Kane, Mrs. Cupp began exhibiting signs of pain when her left leg was moved by members of the facility's nursing staff.

39. As a result, an x-ray was ordered. The results of the x-ray became available on November 20, 2023, and showed a left femur subtle acute impacted fracture involving the sub capital region of the femoral neck (i.e., a broken hip).

40. Mrs. Cupp was sent back to Shadyside for orthopedic intervention.

41. While in the Emergency Department at Shadyside, Mrs. Cupp was found to be hypoxic (i.e., having low oxygen) and tachycardic (i.e., having a high heart rate).

42. Mrs. Cupp was additionally diagnosed by medical providers at Shadyside with a urinary tract infection and pneumonia.

43. At the time of her admission to Shadyside on November 20, 2023, Mrs. Cupp weighed 145.2 pounds.

44. In addition to a fractured left hip, imaging taken at Shadyside showed Mrs. Cupp sustained a nondisplaced fracture of the left inferior pubic ramus (i.e., a broken pubic bone) and an acute fracture of the left anterior acetabular wall (i.e., a break to the hip socket). A fracture of Mrs. Cupp's left sacrum was noted to be possible based on the imaging results.

45. As a result, Mrs. Cupp underwent an intramedullary left hip nailing, a surgical procedure to repair her broken hip.

46. Mrs. Cupp was hospitalized at Shadyside until December 4, 2023, and then returned to Kane.

47. Upon her re-admission to Kane, Mrs. Cupp continued to recover from her injuries and the associated surgery.

48. Because of her injuries, Mrs. Cupp required the assistance of two individuals with her care at all times.

49. Mrs. Cupp was noted to have a poor appetite and only ate ten to twenty-five percent of her meals.

50. The next day, December 5, 2023, a dietician at Kane noted that Mrs. Cupp was at risk for malnutrition. She was prescribed a pureed diet until December 15, 2023, when soft foods were re-introduced into her meal plan.

51. During a psychological evaluation on December 18, 2023, Mrs. Cupp was described as having "experienced a recent traumatic event of being pushed by a peer and experiencing a head laceration and a hip fracture."

52. Mrs. Cupp's medications were adjusted to fit her psychological needs, and members of the nursing staff at Kane were ordered to closely monitor her as a result.

53. During this time, Mrs. Cupp's poor appetite persisted.

54. Additionally, at times, Mrs. Cupp was noted to remove the dressing on her left hip and attempt to climb out of bed. Despite these concerns, no updates were made to her Care Plans.

55. On January 1, 2024, Mrs. Cupp was walking by herself near the nursing station when she lost balance and fell onto her buttocks.

56. Although this fall was not directly witnessed, it was captured on the facility's video surveillance camera.

57. As a result of her second fall, nursing staff at Kane ordered the use of hipsters, or padded briefs, to help prevent injury to Mrs. Cupp. No additional interventions were put into place.

58. On January 9, 2024, Mrs. Cupp weighed 109 pounds.

59. As such, Mrs. Cupp experienced a more than thirty-pound weight loss between November 20, 2023, and January 9, 2024.

60. On January 13, 2024, Mrs. Cupp was taken to Shadyside due to an opening of her left hip incision.

61. At the hospital, Mrs. Cupp's son explained to medical staff that his mother had been largely bed-bound due to pain since her surgery in November 2023.

62. The injury on Mrs. Cupp's left hip was described as a two-centimeter open wound with expressible purulence and tunnels.

63. A wound culture taken that day was positive for Staphylococcus RES.

64. Mrs. Cupp was diagnosed with a soft tissue infection and was prescribed Vancomycin, an antibiotic.

65. The next day, January 14, 2024, Mrs. Cupp was taken to the Operating Room for irrigation and debridement of her wound.

66. Mrs. Cupp was released from the hospital on January 16, 2024, and returned to Kane.

67. Upon re-admission to Kane, Mrs. Cupp was noted to be dependent on a wheeled walker or wheelchair as a result of a noted decrease in her mobility.

68. Mrs. Cupp required additional assistance with eating, walking, transferring, toileting, and hygiene.

69. Mrs. Cupp continued to experience weight loss, and was noted to fall out of bed, without injury, in December 2024.

70. As of the time of this filing, Mrs. Cupp, now age 82, continues to experience pain and restriction of mobility.

## **Kane's Profit from Understaffing**

71. Kane gains much of its revenue and profit from taxpayer dollars by participating in federal and state-funded Medicare and Medicaid programs.

72. In the Medicare/Medicaid system, every nursing home resident is assigned an "acuity" level which reflects the number and severity of that resident's medical conditions and illnesses.

73. A resident with a higher acuity level places a greater demand for care and services on a nursing home and its staff.

74. Skilled nursing facilities, like Kane, use acuity levels to bill Medicare/Medicaid for reimbursement of daily care and services.

75. Medicare/Medicaid reimburses nursing facilities at a higher rate for care and services based on each resident's acuity rate and number of therapy minutes provided to that resident.

76. Accordingly, the higher the facility's acuity levels, the more revenue the facility will generate from Medicare/Medicaid.

77. This creates a financial incentive for nursing homes, such as Kane, to admit and keep residents with greater mental, physical, and psychological needs.

78. Every year, skilled nursing facilities (including Kane) must submit a Medicare Cost Report to The Centers for Medicare and Medicaid Services ("CMS"), in which the facility must account for each dollar received and spent.

79. A resident's acuity level is used by CMS to determine the number of hours the nursing home is expected to provide each day to meet resident needs.

80. CMS then pays the facility according to the hourly rate of reimbursement for the expected number of nursing hours required for each resident.

81. At the end of each fiscal quarter, the nursing home must provide CMS with an accounting of the hours it actually spent providing nursing care to residents.

82. To calculate nursing hours, facilities, such as Kane, add us the hours spent providing care to residents by Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and nursing aides.

83. Throughout the entire period of Mrs. Cupp's residency, Kane failed to provide sufficient and expected licensed care to its residents (i.e., care provided by RNs and LPNs) or expected aide care to its residents.

84. In 2023, based on the acuity of its residents, Kane provided fewer nursing hours to residents than the anticipated minimum staffing promulgated by CMS.

85. According to CMS reporting, by staffing below the anticipated minimum in 2023, Kane saved at least $2,482,482.

86. Kane was understaffed during the first three quarters of 2023. Understaffing at Kane during this period fell between the following values, at a minimum:

   a. Quarter One: understaffed at a value of at least -5.2%;

   b. Quarter Two: understaffed at a value of at least -8%; and

   c. Quarter Three: understaffed at a value of at least -1.1%.

## COUNT I

### Deprivation of Civil Rights Enforceable Via 42 U.S.C. § 1983

87. Plaintiff incorporates by reference every prior and subsequent allegation as though fully set forth herein.

88. Kane is an agent of the Commonwealth of Pennsylvania, and at all times relevant to this Complaint, acted under the color of state law.

89. Kane is bound generally by OBRA and FNHRA, which was contained within the Omnibus Reconciliation Act of 1987. See 42 U.S.C. § 1396r, 42 U.S.C. § 1396(a)(w), as incorporated by 42 U.S.C. § 1396r.

90. Kane is also bound generally by OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define specific statutory rights set forth in the above-mentioned statutes.

91. The specific detailed regulatory provisions, as well as the statutes in question, create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these statutes as defined and amplified by the regulations clearly and unambiguously creates those rights. Grammar v. John J. Kane Regional Centers Glen Hazel, 570 F.3d 520 (2009); Health and Hospital Corporation of Marion County v. Talevski, 599 U.S. 166 (2023).

92. Upon information and belief, Kane, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, failed to implement and follow appropriate custom and policies and/or, in the alternative, had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

93. Kane, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations, as follows:

    a. By failing, as a custom and policy, to care for patients, including Carol Cupp, in a manner that promoted maintenance or enhancement of her life, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A), as pled herein;

    b. By failing, as a custom and policy, to provide residents, including Carol Cupp, the necessary care and services to allow her to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

    c. By failing, as a custom and policy, to periodically review and revise patients' or residents' written Care Plans, including Carol Cupp, by an interdisciplinary team after each of the resident's or patient's assessments, as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

    d. By failing, as a custom and policy, to conduct an assessment of patients or residents, including Carol Cupp, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(II);

e. By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising patients' or residents', including Carol Cupp's Care Plan, as required by 42 U.S.C. § 1396r(b)(3)(D);

f. By failing, as a custom and policy, to ensure that patients and/or residents, including Carol Cupp, were provided medically related social services to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(4)(A)(ii);

g. By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents, including Carol Cupp, was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

h. By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Carol Cupp, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C);

i. By failing, as a custom and policy, to ensure that Kane was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Carol Cupp, to attain or maintain their highest practicable level of physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A), 42 U.S.C. § 1396r(d)(1)(A), and 42 U.S.C. § 1396r(d)(1)(C);

j. By failing, as a custom and policy, to ensure they had an infection control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of communicable disease and infections as required by 42 CFR § 483.80 and 42 U.S.C. § 1396r(d)(3);

k. By failing, as a custom and policy, to ensure that the administrator of Kane met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

      l.      By failing, as a custom and policy, to develop and implement written policies and procedures that prohibit the mistreatment, deliberate indifference, and abuse of residents such as Carol Cupp, as required by 42 U.S.C. § 483.12 and 42 U.S.C. § 1396r(b)(1)(A);

      m.     By failing, as a custom and policy, to ensure that Kane was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Carol Cupp, and in operating such a facility as Kane, as required by 42 U.S.C. § 1396r(d)(4)(A); and

      n.      By failing, as a custom and policy, to ensure that Kane's administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Carol Cupp, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(B).

94. The aforementioned violations indicate that Kane, as a policy and/or custom was deliberately indifferent to the needs of Carol Cupp, and as such, and in conjunction with other conduct described herein, deprived her of federally guaranteed and protected rights.

95. The repeated and systemic failures in the preceding Paragraphs, combined with the failures identified in Paragraphs 41 (a)-(l) demonstrate that Kane, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, failed to implement and follow appropriate customs and policies and/or, in the alternative, had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

96. As a proximate result of Kane's actionable derogation of its regulatory and statutory responsibilities as above-described, Carol Cupp, was injured as previously referenced and suffered pain and distress as a result of the poor care and treatment which allowed her to suffer harm, as described herein.

97. As such, Carol Cupp, suffered, is now entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. 1983 and 42 U.S.C. § 1988:

    a. Money expended for hospital, medical, surgical, and nursing expenses incident to the injuries that Carol Cupp suffered as a result of the treatment and care rendered by Kane until the time of her death;

    b. Pain, suffering, embarrassment, humiliation, inconvenience, anxiety, loss of enjoyment of life and nervousness of Carol Cupp; and

    c. Other losses and damages permitted by law.

WHEREFORE, the Plaintiff, Shawn Cupp, as Attorney-in-Fact for Carol Cupp, demands compensatory damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center, a skilled nursing facility, in an amount in excess of Seventy-Five Thousand Dollars, plus interest, costs of suit, and attorneys' fees.

## COUNT II
### Violations of the United States of America's Constitution Under Amendment Fourteen for Injury to Human Dignity Enforceable Via 42 U.S.C. §1983

98. All of the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

99. During the residency of Carol Cupp, Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center deliberately and/or with deliberate indifference failed to properly care for her, causing her to suffer an injury to human dignity.

100. Specifically, Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center allowed Carol Cupp to remain in a state that was hazardous to her health and well-being.

101. These violations interfere with Decedent Carol Cupp's rights under the Fourteenth Amendment to the Constitution of the United States of America.

102. During its treatment of Carol Cupp, Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center acted pursuant to a state right or privilege, and as such was a state actor.

103. While a patient at Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center, Carol Cupp had a serious medical need, and the deliberate and deliberately indifferent acts and omissions of the staff at Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center indicated deliberate indifference to her medical needs.

104. Carol Cupp was dependent upon Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center and its staff for a significant amount of her activities of daily living, nursing care, and treatment needs.

105. Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center and its staff were deliberately indifferent to Carol Cupp because it knew that she faced a substantial risk of serious harm, and it failed to take reasonable steps to avoid the harm.

106. As a proximate result of the failure of Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center to act properly as above-described, Carol Cupp suffered an injury to human dignity as previously

referenced and suffered pain, distress, and death as a result of the poor care and treatment given to her, allowing her to develop the injuries and suffer death as referenced herein.

107.  As such, Carol Cupp is now entitled to recover the following damages, the following damages:

    a.    Pain, suffering, inconvenience, anxiety and nervousness of Carol Cupp;

    b.    Hospital, medical, surgical and nursing expenses incurred on Carol Cupp's behalf;

    c.    Attorney's fees and costs;

    d.    Other losses and damages permitted by law; and,

    e.    Any other damages as the Court sees fit to award.

WHEREFORE, the Plaintiff, Shawn Cupp, as Attorney-in-Fact for Carol Cupp, demands compensatory damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center, a skilled nursing facility, in an amount in excess of Seventy-Five Thousand Dollars, plus interest, costs of suit, and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

                      Respectfully submitted,

                      ROBERT PEIRCE & ASSOCIATES, P.C.

                      By:*/s/ Robert F. Daley*
                      ROBERT F. DALEY, ESQUIRE
                      Counsel for Plaintiff
                      P.A. ID No.: 81992
                      Robert Peirce & Associates, P.C.
                      437 Grant Street, Suite 1100
                      Pittsburgh, PA 15219
                      (412) 281-7229
                      bdaley@peircelaw.com